# Reynolds v. Reynolds

*Robert B. Keys Jr.,* for plaintiff.
*Barbara Sumple-Sullivan,* for defendant.

CHARLES, *J.,* February 4, 2011—Yomaris Reynolds (hereafter "wife") has filed a motion seeking exclusive possession of a home that is titled solely in her name. Donald E. Reynolds (hereafter "husband") seeks to use his status as a husband in order to remain in the house that has been his home since the parties married. For reasons that we will articulate in more detail within this opinion, we will be granting wife's request for exclusive possession to be effective on April 1, 2011.

## I. FACTS

On November 4, 2010, wife filed a complaint for divorce against husband. The complaint alleged that the marriage was irretrievably broken. At the time the complaint was filed, both parties lived inside a house at 204 East Walnut Street, Lebanon, Lebanon County, Pennsylvania (said real estate will hereafter be referred to as "residence"). At or near the time the divorce complaint

was filed, wife moved to a separate bedroom within residence.

Residence had been purchased by wife in May of 2002 before she and husband became married. Husband did not contribute toward the purchase price of residence, although he says that he invested money in maintenance and repair of residence during the course of the marriage. At all times pertinent hereto, residence remained titled in wife's sole name.

Both husband and wife enjoy good jobs in the health-care industry. Wife's job as a pharmacy technician at the Good Samaritan Hospital requires her to work Monday through Friday until 11:00 p.m. Husband works at Hershey Medical Center. His job begins at 3:30 p.m. and extends until roughly 3:30 a.m. On a typical day, wife would arrive home from work between 11:00 p.m. and 11:30 p.m. and husband would return home from work at about 4:00 a.m.

During the marriage, there were times when husband and wife would enjoy each other's company in the early morning hours after husband returned home from work. As the marriage soured, wife began her sleep period shortly after she returned home from work. In or about October of 2010, wife began sleeping in a separate bedroom and would be fast asleep when husband returned from work at about 4:00 a.m.

Wife's daughter is Esther Vallejo (hereafter "Esther"). Esther is a recent graduate of Penn State University. She works part-time as a human relations representative and interpreter at Hershey Foods. Esther is pregnant.

Esther moved back to residence following her graduation from Penn State. She testified that her mother moved into her bedroom in or about October/ November of 2010. She also stated that on a nearly daily basis, husband would awaken she and wife when he returned home from work by turning on all of the lights in the home, coming into their bedroom, turning on the laundry machine and generally acting in a way that would ensure that occupants inside the home would awaken. Esther stated that she told husband to cease and desist this behavior "almost every day."

Esther stated that things became so bad that she had her boyfriend, Corey Reed, move into residence. Mr. Reed is an ex-marine who is now a full-time student at Penn State University. Reed testified that since he moved into residence in January of 2011, there have been no problems with loud and boisterous behavior by husband at 4:00 a.m.

During the course of the marriage, husband would contribute toward the expenses of residence. However, this changed about six months ago. Apparently, a source of disagreement for the parties involved the extent to which wife's children should be forced to contribute toward household expenses. Husband did not believe that either Esther or wife's son contributed nearly enough to the expenses of the household. Therefore, he proclaimed on several occasions that he no longer had any interest in contributing toward the household bills.

Husband owns a trailer located in Lawn. Esther lived in this trailer for a time prior to 2008. However, the trailer has been vacant since 2008. Wife stated that husband has

spent a considerable amount of time "fixing up" the trailer in his spare time. Still, husband claims that the trailer is unlivable because of its poor condition. In support of his claim, husband presented photographs that he claimed were accurate depictions of the current condition of the trailer. However, on cross-examination, wife's attorney pointed out that the stamp on the back of the photographs revealed that they were developed in 2008.

Based upon the above testimony, wife seeks to exclude husband from residence. Husband testified that he has hopes of salvaging his marriage and wants to remain in residence in order to do just that. Wife's motion for exclusive possession of residence is now before us for disposition.

## II. LEGAL PRINCIPLES

Exclusive possession of a marital residence is a concept that first surfaced in Pennsylvania during the early 1980's. In the case of *Laczkowski v. Laczkowski,* 496 A.2d 56 (Pa. Super. 1985), the Superior Court ended all debate about whether Courts possess the authority to award possession of a marital home during the pendency of a divorce. Citing the "full equity power and jurisdiction" of courts in matrimonial cases, the Superior Court stated: "we hold that the lower court had the authority to temporarily award the marital residence, pending equitable distribution of marital property, to a spouse having physical custody of a minor child." *Id.* at 60.

In 1990, the authority of a court to award exclusive possession of a marital home was codified. 23 Pa.C.S.A. § 3502(c) reads: "The court may award, during the pendency of the action or otherwise, to one or both of the parties

the right to reside in the marital residence." Surprisingly, no appellate court precedent has been articulated since *Laczkowski* and its codification at § 3502(c) of the divorce code. However, quite a few common pleas courts have wrestled with the concept. We will highlight several.

The case of *Uhler v. Uhler*, 41 Pa. D. & C. 3d 3 (1985), aff'd, 626 A.2d 656 (Pa. Super. 1993), involved a home that was damaged by fire. For six months prior to the fire, Mrs. Uhler resided alone at the marital residence. As the home was being reconstructed, Mr. Uhler voiced a desire to return and live at the newly reconstructed house. The Lancaster County Court of Common Pleas cited "the presence of children in the home and their emotional welfare" as the "most important consideration."

The court concluded:

The case at bar does not present a situation which would compel the court to enter an award of exclusive possession of the home....

....

The equitable remedy of exclusive pendente lite possession of the "marital" home is an award which is to be used sparingly. The situation presented by petitioner does not give rise to the protections afforded by the divorce code. 41 Pa. D. & C. 3d at 6-7.

In *Vuocolo v. Vuocolo*, 42 Pa. D&C 3d 398 (1987), the Lawrence County Court of Common Pleas reached a result different than the one is *Uhler*, primarily because it focused on the interest of the parties' 15-year-old son. The court in *Vuocolo* stated:

The decision to allow one spouse exclusive possession of the marital residence has frequently turned on the needs of minor children, on the age and health of the parties, and on their financial needs and resources....

...The marital residence is the only home [the parties'] son has known.... 42 Pa. D. & C. 3d at 406 (citations omitted).

In *Merola v. Merola*, 19 Pa. D. & C. 4th 538 (1993), the court granted exclusive possession of a marital home even though the parties had no minor children. *Merola* involved a vulnerable wife who was confined to a wheelchair and needed daily assistance from the parties' adult daughter. Although the court recognized and respected the fact that Mr. Merola loved his wife and did not want to separate, it nevertheless concluded that a one-year exclusion from the marital residence was appropriate. In rejecting the argument that exclusive possession should be awarded only in a case involving children, the court stated:

This court finds that the Superior Court in *Laczkowski v. Laczkowski*, supra, did not specifically confine its ruling solely to cases in which there is a minor child. Where there is, as in the within case, a woman who is vulnerable because of her serious illness, and her mental and emotional health and welfare is compromised by the ever-present knowledge that defendant can move in and out of the marital home on weekends at defendant's own pleasure and whim, there is good reason to award temporary exclusive possession to said woman. 19 Pa. D. & C. 4th at 541.

In *Duzgun v. Duzgun*, 76 Pa. D. & C. 4th 538 (2005), the court described exclusive possession as a "harsh rem-

edy that will not be awarded cavalierly." Although Mrs. Duzgon stated that her husband's "occasional" telephone conversations with his girlfriend caused "tension in the household," the court found no reason to award exclusive possession to only one spouse. The court stated:

> Here this is no allegation of spousal or child abuse. The parties are separated but living under the same roof. They have reached an accommodation — wife sleeps upstairs in her bedroom and husband sleeps downstairs in the basement.

> They have worked out financial arrangements with husband paying the mortgage, electricity, oil bills and a portion of the food expenses wife pays for her own telephone bills, some of the food expenses and occasionally heating expenses. Wife pays for the children's dental bills and husband pays for medical bills....

> ...

> ...I do not find that wife has established a clear need to exclude husband from the residence. 76 P. D. & C. 4th at 542-543.

The final case we will cite is *Chappell v. Chappell*, 81 Pa. D. & C. 4th 235 (2007). *Chappell* focused upon the parties' 17-year-old daughter, who was a straight A student and a member of the National Honor Society. The daughter wanted to remain in the marital home and graduate from the school in which she excelled. The problem was that her father retained possession of the marital home upon separation and the daughter's relationship with her father was strained. Based upon the above facts, the court awarded exclusive possession of the marital real estate to

the wife so that she could raise the parties' daughter until graduation.

After reading and reviewing all of the above cases, we reach the following conclusions about Pennsylvania law:

(1) Exclusive possession of a marital home is not a remedy that should be awarded "cavalierly" or without compelling cause.

(2) Exclusive possession of a marital home is not exclusively dependent upon the need to protect children. Although *Laczkowski*, supra, limited its holding to cases involving children, the subsequent enactment of § 3502(c) of the Divorce Code did not contain any such limitation. We will read § 3502(c) as it was written -- to apply to all marital cases whether or not the parties had children.

(3) Even though the interests of children are not required in order to grant exclusive possession of a marital home, the existence of children in a household is a key factor that courts must consider in deciding whether to award exclusive possession. We will more readily award exclusive possession in the case when the welfare of children is at stake than we will in a case where no children are involved.

(4) In a case where the welfare of children is not at stake, we will consider a multitude of factors, including the health of the parties, the extent to which tension in the household causes emotional trauma,[1] the financial

---

1. Emotional trauma alone will not give rise to an eviction under Pennsylvania's Protection from Abuse Act. However, we can and will consider it as a factor in awarding exclusive possession.

wherewithal of the parties to separately maintain two residences, and the ability of the excluded spouse to obtain adequate living arrangements elsewhere.

## III. DISCUSSION

In this case, there are no minor children in the parties' household who will be affected by our decision. On the other hand, two of wife's adult children are living in the marital home and have been profoundly affected by husband's presence. Moreover, wife's daughter is pregnant with her first child and has claimed that husband's presence in the marital home has made her pregnancy more difficult.

With respect to family finances, the good news is that both husband and wife enjoy good jobs in the medical profession. The bad news is that the parties are not contributing equally toward the expenses of the marital home. For at least the past several months, wife has been solely responsible for paying all of the major household expenses without any financial assistance from husband. This is a factor we will weigh in favor of wife's motion for exclusive possession.

Another factor to be considered is the behavior of the parties and the tension that behavior creates within the marital abode. With respect to this factor, the parties presented starkly differing testimony. Mother and Esther painted a picture of husband as a nearly psychopathic vindictive man who would use any means at his disposal to make wife's life miserable. Amazingly, husband testified that he did not even perceive that a problem existed between himself, his wife and Esther. As with most instances where a party's perception is colored by his/her perspec-

tive, we find that the truth lies somewhere between the extreme evidence presented by the parties.

Husband and wife have conflicting work schedules that create the perfect opportunity for misunderstanding and strife. Wife arrives home at about 11:00 p.m. and husband arrives at the marital home at about 3:30 in the morning. Apparently, this schedule did not create a problem early in the parties' relationship. At times, the parties would use the early morning hours after husband's arrival as their "together time." As the marriage soured and after Esther moved back into the marital abode, wife wanted to use the early morning hours to sleep. Husband wanted to use these hours to connect with wife. As a result, husband would frequently awaken wife when he returned to residence. After wife filed her divorce complaint, she viewed husband's awakening of her as harassment while husband viewed his awakening of wife as a means to reconnect and restore his failing marriage.

As we see it, there is a time and a place for everything. 4:00 a.m. is not the time to save a marriage by awakening one's spouse. Accordingly, we will view this behavior by husband as a factor to be weighed in favor of wife's request for relief.

We must also consider whether husband would have the ability to relocate to another residence upon eviction. Both parties presented testimony regarding a trailer owned by husband that is located in Lawn, Pennsylvania. According to husband, the trailer is in very poor condition and has a leaking roof. Husband indicated that it would not be possible for him to live at the Lawn trailer. To dispute this testimony, wife indicated that husband has

spent a considerable amount of time working to "fix" the Lawn trailer over the past two years. She also points out that the photographs presented by husband to depict the Lawn trailer were stamped with a 2008 date of development. However, wife was not able to present any direct testimony regarding the current condition of the Lawn trailer.

We do not know whether husband's Lawn trailer is ready for immediate occupancy. However, we do know that husband is blessed with a good job. We also know that husband has been paying next to nothing as living expenses over the past six months. Therefore, we conclude that husband possesses more than enough resources to enable him to procure a new residence.

There is one final factor upon which we place more than just a little weight. Wife is the exclusive owner of residence from which she seeks to exclude husband. More important, wife owned residence prior to the parties' marriage. Thus, residence will be considered non-marital property at the time of the parties' divorce. The non-marital nature of residence is important because it signals that husband's departure from residence is inevitable. When the parties' divorce is finalized, wife will retain ownership and exclusive possession of residence.

## IV. CONCLUSION

As we weigh all of the above factors, we conclude that wife should be awarded exclusive possession of residence. Sooner or later, husband will have to vacate residence. We see no reason why sooner is not best and we perceive many reasons why later could be problematic. On the other hand, we do not view "soon" as mean-

ing "immediate." residence has been husband's home. He will need time to locate new living quarters, pack his belongings and then effectuate the move. We will give him that time.

By an order entered simultaneous with this opinion, we will be awarding wife exclusive possession of residence effective April 1, 2011. Until that date, husband may continue to utilize residence as his residence provided that he pays to wife one-third[2] of the mortgage, property taxes, property insurance and utility expenses of the marital home and provided that he does everything in his power to avoid awakening wife and Esther when he returns home from work.

## ORDER OF COURT

And now, to wit, February 4, 2011, after hearing and in consideration of the arguments of the parties, the order of this court is as follows:

1.  Exclusive possession of the premises located at 204 East Walnut Street, Lebanon, Lebanon County, Pennsylvania is awarded to Yomaris Reynolds effective April 1, 2011.

2.  For the months of February and March of 2011, Donald Reynolds shall reimburse Yomaris Reynolds for one-third of the mortgage, taxes and utilities pertaining to 204 East Walnut Street.

3.  Donald Reynolds shall use his best effort to avoid

---

2. We say one-third instead of one-half because we agree with husband that wife's adult children should also contribute to the expenses of the household.

awakening other occupants of the house when he arrives home from work.